**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NANCY KARKUT AND JEFFREY KARKUT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TARGET CORPORATION, DANIEL R. | : | |
| BUCKLEY, POLICE OFFICER, MIDDLETOWN | : | |
| TOWNSHIP, MIDDLETOWN TOWNSHIP | : | |
| POLICE DEPARTMENT AND JANE DOE | : | NO:  04-3396 |

**MEMORANDUM**

Baylson, J.                                                September 28, 2006

**I.      Introduction**

In this case against Target Corporation ("Target") and Police Officer Daniel R. Buckley,

Defendants have separately moved for summary judgment.  For the reasons set forth below,

Defendant Target's Motion for Summary Judgment (Doc. No. 31) and Defendant Buckley

Motion (Doc. No. 32) will be granted, except for certain state law claims against Target.

**II.      Background**

**A.      Factual Background**

In connection with the summary judgment proceedings, the moving parties filed

statements of undisputed facts, to which the Plaintiff, Nancy Karkut,[1] has responded with

additional facts, to which the Defendants responded.  The basic facts of the case concern an

incident of alleged shoplifting, and are not in great dispute; however, there are some substantial

disputes of fact, and the Court will therefore consider the facts in the light most favorable to the

_____

[1]  Although there are two Plaintiffs, husband and wife, the Court will use the singular
throughout because Plaintiff Jeffrey Karkut was not present at the incident and sues only for loss
of consortium.  Compl. at ¶¶ 73-74, 95-96.

Plaintiff, as the non-moving party.

In sum, while shopping at the Target store in Langhorne, Pennsylvania, Target employees became suspicious that Plaintiff Nancy Karkut ("Plaintiff") was shoplifting, approached and interrogated her, and thereafter telephoned the Middletown Township Police Department.  Defendant Officer Buckley, responding to the call, placed Plaintiff under arrest for retail theft.  The charges were eventually dismissed, and she filed this civil rights action seeking damages.

According to Plaintiff Nancy Karkut, she drove to the Target store intending to exchange some previously purchased merchandise.  However, because she had forgotten to bring along the receipt for those purchases, she left the items she intended to exchange in her car.  Upon entering the store, she took a shopping cart and proceeded to pick out certain items of clothing she wanted to exchange for the items she had previously purchased, plus some additional "health and beauty" items to purchase.  She placed the items intended for exchange in a K-Mart bag she found already in the cart, separate from "health and beauty" items that she had picked for purchase.  Plaintiff contends that some of these exchange items were not "concealed" because they were at least partially sticking out of the bag.

When she approached the cashier's line, as she testified in her deposition, she advised the cashier that she had some items in her bag that were to be exchanged for other items she had previously bought, that were still in the car.[2]

While Plaintiff was at the cashier's desk, she paid for the health and beauty items, but did

---

[2]  Although the cashier disputes that Plaintiff said this, the Court will accept it for purposes of the present motion.

not pay for the clothing, which remained in the K-Mart bag as she went towards the exit of the store.  At the exit, the store has a "vestibule" between two sets of glass doors.  While Plaintiff was moving through the vestibule,[3] members of Target's "asset protection" department approached her.  They asked Plaintiff to accompany them to an office where they asked her a number of questions about the items that were still in the K-Mart bag, for which she had not paid.

As a result of the interrogation, Target employees telephoned Middletown Township Police and requested assistance, as a result of which Officer Buckley came to the Target store. When he arrived, the Target employees made known to Officer Buckley their version of events, and of their personal, first-hand observations that Plaintiff had concealed items of clothing by placing them into the K-Mart bag in her shopping cart, and had exited the store without paying for them.  Based on this information, Officer Buckley advised Plaintiff that she was being arrested for retail theft, and proceeded to handcuff her with her hands behind her back.  Plaintiff testified that this, and Officer Buckley's forcing her to raise her hands into an uncomfortable position, caused an anxiety attack.  She was taken to the Middletown Township Police Department where she was photographed and fingerprinted and charged with the offense of retail theft.

Of the facts related above, the Court believes that the most material dispute is whether the items that Plaintiff placed in the bag in her shopping cart were "concealed" or whether, because she claims that some of them were observable in part because they were sticking out of the K-Mart bag, that they were no longer "concealed".

_____

[3] That is, she had passed through the first exit door into the vestibule, but not the second door, which leads outside.

**B.**   **Procedural Background**

Plaintiff filed her complaint in this Court on July 19, 2004.  Originally assigned to Judge

Charles R. Weiner, the case was re-assigned to the undersigned on February 7, 2006.  Defendant

Target filed its Motion for Summary Judgment (Doc. No. 31) on June 13, 2006 and an

accompanying Statement of Undisputed Facts (Doc. No. 35) on June 20, 2006.

Defendant Buckley filed his Motion (Doc. No. 32) on June 14, 2006.   Following extensive

briefing on the summary judgment motion, which was completed on July 26, 2006, the Court

heard oral argument on August 16, 2006.  At the beginning of the argument, at the request of the

Court, counsel prepared a rough drawing of a "floor plan" of the Target store, marked as Court

Exhibit No. 1, which has been helpful in understanding the logistics of the place where the

incident took place.

**C.**   **Plaintiff's Claims**

Counts I, II, III, VI and VII of the Complaint based jurisdiction on diversity of

citizenship, and assert various state common law claims against Target and Target employee,

Jane Doe.[4]  Count I alleges intentional and/or reckless infliction of severe physical harm and

emotional distress.  Compl. at ¶¶ 35-39.  Count II complains that Target and Doe falsely

imprisoned Plaintiff Nancy Karkut.  Id. at ¶¶ 40-46.  Count III alleges malicious prosecution.  Id.

at ¶¶ 47-52.  Count VI claims negligence.  Id. at ¶¶ 69-72.  Count VII complains of loss of

consortium suffered by Jeffrey Karkut, husband of Nancy Karkut.  Id. at ¶¶ 73-74.  Counts IV

and V constitute claims against only Target.  Count IV complains of negligent hiring,

employment retention and training of employees, id. at ¶¶ 53-63, and Count V alleges negligent

---

[4]  Plaintiff never moved to identify Jane Doe, and make her a party.

supervision of Target's employees by Target.  Id. at ¶¶ 64-68.

Counts VIII, IX, XI, XII and XIII assert claims against Officer Buckley.  Counts VIII and IX claim violations of Plaintiff's civil rights protected under 42 U.S.C. §§ 1983 and 1988, alleging "unlawful detention and confinement," and "punishment without the due process of law," respectively.  Id. at ¶¶ 75-79.  Counts XI and XII are pendant state law claims against Officer Buckley; Count XI alleging assault and battery, id. at ¶¶ 87-89, and Count XII intentional and/or reckless infliction of severe physical harm and emotional distress.  Id. at ¶¶ 90-94. Finally, Count XIII asserts Jeffrey Karkut's claim of loss of consortium against Officer Buckley as well.  Id. at ¶¶ 95-96.

As to Count X, at oral argument, Plaintiff's counsel stated that Plaintiff was dropping the Monell and the Eighth Amendment civil rights claims against the Township and police department, eliminating this Count of the Complaint.  See id. at ¶¶ 80-86.  Thus, Middletown Township and its police department are no longer parties.

Plaintiff seeks compensatory damages exceeding $75,000 for each count, plus punitive damages, attorney's fees, interests and costs.  See id.

## III.   Parties' Contentions on Summary Judgment

### A.   Defendants

Defendants assert that they are entitled to summary judgment, particularly in view of 18 Pa. Con. Stat. § 3929, Pennsylvania's Retail Theft statute, which confers immunity from liability to a peace officer, merchant or merchant's employees for the reasonable detention of a suspected shoplifter.  18 Pa. Con. Stat. § 3929(d).  Target asserts that all of Plaintiff's injuries arose out of Officer Buckley's conduct, and it is entitled to summary judgment for all claims.  Defendant

5

Officer Buckley asserts that, in addition to the immunity the statute provides for his actions, he is also entitled to qualified immunity.

**B.**   **Plaintiff**

The Plaintiff makes a number of assertions in opposition to summary judgment, aside from the general point that the questions of fact in this case require submission of all issues to the jury.  Specifically, Plaintiff asserts that because the items which she placed in the K-Mart bag were not totally concealed, the presumption of intent to commit retail theft allowed under the statute does not apply.  Plaintiff also asserts, as she testified under oath, because she made her intentions to go to the "Exchanges and Returns" desk[5] to make an exchange known to the cashier, and the cashier let her go through the check-out line with the unpaid items still in the bag, this put Target on notice that she was not attempting retail theft.  She also claims that the Target cashier's conduct in letting her go through the line constituted a waiver of Target's contention that Target suspected her of, or could reasonably accuse her of, retail theft, and deprives Target of the immunity it asserts under the statute.

Plaintiff also asserts Officer Buckley did not have probable cause to arrest her, and in any event, the determination of probable cause, which hinges on whether the arrest was "objectively unreasonable," is inherently a factual question that must be decided by the jury.  Likewise, because Officer Buckley never carefully investigated this matter, and did not even inquire as to Plaintiff's side of the story before placing her under arrest, Plaintiff also argues that Officer

---

[5]  The "Exchanges and Returns" counter is accessible through glass doors that adjoin the vestibule; these doors are inside the vestibule the to immediate right of customers *entering* the store.  A customer exiting the store could, once inside the vestibule, access the "Returns and Exchanges" counter, but it would require crossing over metal barriers that divide the entrance and exit portions of the vestibule.  See Pl.'s Ex. J, *Photos of the Vestibule Area.*

Buckley is not entitled to qualified immunity as a matter of law.

## IV.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R. Civ. P. 56©.  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id. _____

_____A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

V.    **Discussion**

   A.    **Claims Against Target**

Plaintiff alleges false imprisonment, malicious prosecution and negligence, and the intentional infliction of physical harm and emotional distress against Target.  The Court finds that Target had probable cause to suspect Plaintiff of retail theft, thus entitling Target to a grant of summary judgment as to the claims of false imprisonment and malicious prosecution.  From the briefs on the Motion it is clear that Plaintiff asserts that all her injuries are derivative to her alleged detention by Target and the subsequent actions of Officer Buckley.  Because Pennsylvania's Retail Theft Statute provides immunity from liability to shopkeepers for the detention of reasonably suspected shoplifters, this Court will also grant summary judgment to Target for all claims.

   1.    **False Imprisonment**

False arrest and false imprisonment are "nearly identical claims" that are "generally analyzed together," Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citing Gagliardi v. Lynn, 285 A.2d 109 (Pa. 1971).[6]  Specifically, false arrest is one made "without probable cause."  The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

Thus, "the proper [initial] inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had

_____

   [6]  Plaintiff does not allege false arrest.  However, as the following analysis shows, false arrest is a necessary element of false imprisonment, and the determinative element of either is the existence (or lack) of probable cause.

probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Probable cause, in turn, exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).[7]

In this case, 18 Pa. Con. Stat. § 3929, Pennsylvania's Retail Theft statute, is most relevant. A shopkeeper is entitled to immunity from liability as long as it establishes probable cause for the reasonable detention of a suspected shoplifter. In subsection ©, the statute directs an inference of intent from the act of concealment of merchandise if a person:

> intentionally conceal[s] unpurchased property of any store or other mercantile establishment, either on the premises or outside the premises of such store [which is deemed prima facie evidence of] the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof . . . the finding of such unpurchased property concealed, upon the person or among the belongings of such person, shall be prima facie evidence of intentional concealment . . . .

Id. at § 3929©.

The statute also provides immunity to a police officer or merchant for detention of a person if there was probable cause to believe that a retail theft has occurred:

---

[7]  While we acknowledge that the Third Circuit has generally viewed "the question of probable cause in a section 1983 damage suit [as] one for the jury," Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998), "a district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," particularly where there are no credibility questions at issue. See Marasco, 318 F.3d at 514 (finding officers had probable cause for arrest); Sherwood v. Mulvihill, 113 F.3d 396, 402 (3d Cir. 1997) (holding probable cause existed where affidavit detailed tip from a reliable informant corroborated by an undercover narcotics purchase, even where affidavit was rewritten to correct for misrepresentations and omissions). In this case, Plaintiff's own testimony allows the court to conclude probable cause existed.

**(d) Detention.** – A peace officer, merchant or merchant's employee or an agent under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft **may detain the suspect in a reasonable manner for a reasonable time** on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise, to inform a peace officer, or to institute criminal proceedings against the suspect. Such **detention shall not impose civil or criminal liability upon the peace officer, merchant, employee, or agent so detaining**.

18 Pa.C.S. § 3929(d) (emphasis added).

### 2.    Pennsylvania Case Law Interpreting the Pennsylvania Theft Statute

The Court will first look at Pennsylvania cases which construe the Pennsylvania statute. On the issue of probable cause, two cases are illustrative of Pennsylvania's interpretation of the statute. Most recently, Angelopoulos v. Lazarus Pa. Inc., Pa. Super., 884 A.2d 255 (2005) upheld the trial court's grant of a new trial on the grounds that a jury's verdict was against the weight of the evidence. The plaintiff had sued for false arrest after she was detained by the defendant's in-house store detective for eating two pieces of chocolate contained in an open display that the plaintiff thought was presented by the store as a free sample. Id. at 257-258. In the course of discussion, the Court held the Retail Theft Act authorized the store to detain the plaintiff without civil liability for the purpose of identifying her, verifying her identity, determining whether she had unpurchased merchandise in her possession, and recovering unpurchased merchandise from her possession, informing a peace officer and instituting criminal proceedings. Id. at 260. However, the Superior Court upheld the trial court's granting of a new trial because the store had detained the plaintiff too long, and thus was not entitled to the benefits

10

of the statute.  Id. at 262.

In an older case, Commonwealth v. Lacy, 324 Pa. Super. 379, 471 A.2d 888 (Pa. Super. 1984), the court affirmed a shoplifting conviction where the defendant had been found to have in his possession merchandise for which he had not paid, and held that the security guards who searched the defendant had probable cause to suspect him of retail theft.  The appellant was convicted of shoplifting after store security personnel observed him enter the store with a box, place sweaters off a rack into the box, close the box and walked out of the store.  See id. at 383-384.  "These observations were more than sufficient to support the guards' belief that appellant was committing theft."  Id. at 382-383.

Based on these two cases, this Court finds that Target's employees acted appropriately under the Retail Theft Statute without necessarily considering the issue of "concealment."  When considering the plain meaning of "conceal" and also the statutory definition,[8] this Court concludes that Plaintiff "concealed" Target merchandise within the definition of the Retail Theft Statue.  By putting the merchandise in a bag, she obviously intended to take it out of plain view, even if it was not totally concealed.  Accepting Plaintiff's view of the word "conceal" would take courts down a slippery slope.

Pennsylvania state courts sometimes reverse convictions because the merchandise was not concealed.  Commonwealth of Pennsylvania v. Shapiro, 223 Pa. Super. 15, 297 A.2d 161 (Pa. Super. 1972) (reversing a conviction, holding the presumption of intent under § 3929© does not exist when the merchandise, "allegedly taken was in plain view"); Commonwealth of

---

[8]  The word "conceal" is defined in the Retail Theft Statute as, "To conceal merchandise so that, although there may be some notice of its presence, it is not visible through ordinary observation."  18 Pa. Cons. Stat. § 3239(f).  Thus, total concealment is not necessary.

Pennsylvania v. Bonn, 244 Pa. Super. 315, 368 A.2d 738 (Pa. Super. 1976) (reversing a

conviction, holding that when merchandise is in a suspect's opened handbag, but remains in plain

view of the security guard with the price tag still attached, the merchandise is not concealed);

Commonwealth of Pennsylvania v. Monville, 306 Pa. Super. 323, 452 A.2d 747 (Pa. Super.

1982) (reversing a conviction, holding that evidence of a suspect placing an umbrella into

another store's shopping bag is insufficient to establish concealment absent testimony as to,

"how big the bag was; nor that the bag was ever closed; nor that the umbrella was ever out of

[the guard's] sight.")  These cases are distinguishable because the evidence did not show any

concealment.  In Shapiro and Bonn, the merchandise was still in plain view, while the evidence

in Monville failed to establish that the merchandise was not in plain view.

      The Court finds that when the facts do show concealment, the Pennsylvania cases apply

the presumption of intent prescribed by statute.  In Commonwealth of Pennsylvania v. McSween,

265 Pa. Super. 458, 402 A.2d 528 (Pa. Super. 1979) the Court affirmed a conviction, holding the

defendant had concealed merchandise when, "He had rolled them up in his hands and held them

against his body so that the store detective, standing five inches away from him, could not see the

belts."  Id. at 529.  Likewise, the Court in Commonwealth of Pennsylvania v. Jones, 365 Pa.

Super. 57, 528 A.2d 1360 (Pa. Super. 1987), upheld a conviction, finding that the evidence

received at trial was sufficient for the trial judge to find the appellant, "harbored the requisite

intent."  Id. at 61-62.  A witness testified that he observed the appellant pick up several pieces of

meat, put them inside his coat, and zip the coat about half-way up.  Id. at 61-62.  Thus, "The

evidence received at trial established that the appellant *concealed* the unpurchased meat under his

coat."  Id. (emphasis added).

In the present case, the undisputed evidence shows material concealment, if not full concealment.  The Court rejects Plaintiff's argument that because some items the Plaintiff put in the bag were not fully concealed, that therefore the presumption in § 3929© does not apply.  The statute does not require complete concealment, and the Court interprets the term "concealment" in the statute as being any kind of material concealment.  Under the facts as viewed in the light most favorable to the Plaintiff, Plaintiff's putting the items in the K-Mart bag allowed Target to believe an intent to conceal them, and therefore, the Court concludes that these items were materially concealed.  Why else would Plaintiff put these items into a bag?  Accordingly, the asset protection investigators had reason to stop and interrogate Plaintiff.  Moreover, the fact that she told the cashier about the items does not, as Plaintiff argues, somehow remove the presumption, since the asset protection employees were not aware of this communication.  But even if they were told, under the terms of the statute, they were entitled to do what they did in this case.

However, as noted above, the Court has also concluded that the Target employees had probable cause to detain the Plaintiff under the terms of the statute, independent of the issue of concealment.

### 3.	Federal Cases Interpreting the Retail Theft Statute

There have also been cases in this district that have applied Pennsylvania's Retail Theft Statute, granting immunity to shopkeepers when they had probable cause to detain suspected shoplifters.  Although these cases are usually brought under § 1983, their reasoning applies to state law claims, and resolve some state law claims.

In Sporny v. Burlington Coat Factory Warehouse of Philadelphia, Inc., No. 97-5550,

1999 WL 124466 (E.D. Pa. March 1, 1999) (Fullam, J.) (granting summary judgment when defendants asserted immunity pursuant to the Retail Theft Statute), while acknowledging that the plaintiff alleged facts that bore on her guilt or innocence as a shoplifter, the Court also found that these did not go to the question of whether the store manager had probable cause to detain the plaintiff in the first place. Id. at *3. When security personnel detained the plaintiff after she set off an alarm, they found a pocketbook on her person which still had the security sensor attached, and for which she had no receipt. Id. at *1. The plaintiff claimed that it was the cashier's error that resulted in a failure to ring up and pay for the pocketbook. Id. However, the Court stated that since the plaintiff did not dispute that as she was leaving the store she had merchandise for which she had not paid, "[u]nder the terms of the statute set forth above, there was probable cause for her detention and for the police referral and further investigation, as a matter of law." Id. at *2.

In Britt v. May Department Stores Co., No. 94-3112, 1995 WL 408348 (E.D. Pa. June 30, 1995) (Bechtle, J.), the Court granted defendant's motion for summary judgment on allegations of false imprisonment because store security personnel had probable cause to detain and question an employee when surveillance videotapes showed the employee removing security sensors from merchandise. Id. at *3. The Court relied most heavily on plaintiff's voluntary submission to an interview with security personnel. The fact that removing security tags from merchandise when no sale was in progress violated store policy established probable cause to believe that retail theft was occurring within the definition of the Retail Theft Statute:

> Finally, as May pointed out, Lord & Taylor's videotape surveillance of plaintiff, on four occasions, removing sensormatic tags in the absence of a customer sale, gave company representatives probable cause to question plaintiff about those incidents

. . . .  The evidence in the record clearly establishes that May's representatives had sufficient cause to interview plaintiff in regard to suspected theft.

Id.  These cases confirm that federal courts are consistent with Pennsylvania courts as to the existence of probable cause under the Retail Theft Statute.

The Court concludes that 18 Pa. Con. Stat. § 3929, as well as federal civil rights case law, warrant granting summary judgment in favor of Target on all claims as to which the statute provides immunity, because we find that Target had probable cause and reasonably detained Plaintiff Karkut.  Some of Plaintiff's negligence claims as stated in the Complaint could be construed to assert that Target is responsible for Plaintiff's injuries independent of the legal consequences fo the Retail Theft Statute.  Target's Memorandum (pp. 14-16) clearly asserts, however, that the evidence does not allow those claims to proceed to trial because all of Plaintiff's injuries were caused by Officer Buckley, whose conduct constitutes a superceding cause, and thus cut off Target's liability.

Plaintiff admitted no Target employee caused her any physical injury.  Any emotional injury could only have arisen while Plaintiff was being questioned and detained by Target, for which conduct the Court has found Target is protected under the statute, or after Officer Buckley arrived.  Under these facts the Court agrees that Officer Buckley then assumed control over the situation, constituting a superceding cause, or a "factual cause."  See Pennsylvania Standard Civil Jury Instructions, 3.25.  Plaintiff's Brief, p.18, argues that all of Plaintiff's claims for injuries are derived from Target's conduct as being without probable cause.  Since that theory has been rejected, Target is entitled to summary judgment on all claims.

## B.   Claims Against the Township Defendants

15

1.      **False Imprisonment**

a.      **Existence of Probable Cause and 18 Pa.C.S. § 3929**

As to the liability of Officer Buckley, the Court similarly finds that his conduct was objectively reasonable as a matter of law.  The disputes as to certain facts do not warrant submitting this case to a jury.  The Seventh Circuit's decision in Gramenos v. Jewel Co., Inc., 797 F.2d 432 (7th Cir. 1986) is relevant, and has been adopted by other judges in this Court and cited by the Third Circuit, and is therefore persuasive authority.

According to the undisputed facts of Gramenos, the store security guard told the police that he saw Gramenos put merchandise into his pocket, and that Gramenos ran through the store after being confronted.  Id. at 438.  Furthermore, it was undisputed that Gramenos contested the security guard's version of events to the arresting officer.  Id.  The Court noted that the Supreme Court's definitions of probable cause, "do not suggest that an officer risks his career and his fortune by believing an apparently sober eyewitness to a crime."  Id. at 439 (relying on, Illinois v. Gates, 462 U.S. 213 (1983); Henry v. United States, 361 U.S. 98 (1959)).

Indeed, Gramenos holds, "Police have reasonable grounds to believe a guard at a supermarket" on the likelihood that a security guard is a reliable witness.  Id. at 439.  The Court noted that there is a limited chance that the guard is pursuing a grudge, and that the store would prefer its guards to err on the side of caution so as not to embarrass customers or invite lawsuits. Id.  Moreover, the Court noted, "Just as a single eyewitness's statement-without further investigation or a narration of contrary evidence-can support a warrant, so a single eye-witness's statement can support an indictment and a conviction."  Id. at 440.

The Third Circuit has cited Gramenos with approval.  In Merkle v. Upper Dublin Sch.

16

Dist., 211 F.3d 782 (3d Cir. 2000) (affirming, in relevant part, a grant of police officer's motion

for summary judgment on the grounds that a report from a credible eyewitness constitutes

probable cause for an arrest), the Court first stated, "If, 'at the moment the arrest was made . . .

the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably

trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff

had violated the law, probable cause is present." Id. at 789 (quoting Hunter v. Bryant, 502 U.S.

224, 228 (1991)).  Looking to the facts and circumstances before it, the Court found that when a

school principal informs a police officer that a teacher has removed school property with the

intent to give the property away, that police officer has probable cause to suspect the teacher of

stealing as a matter of law.  Id. at 790.  Citing Gramenos, the Court rejected the plaintiff's

arguments that probable cause was lacking because the officer failed to interview other

witnesses.  Id. at n. 8 ("This report alone sufficiently established probable cause.  Hahn [the

police officer] was not required to undertake an exhaustive investigation in order to validate the

probable cause that, in his mind, already existed.")

Only one shoplifting case in this District refers to Gramenos.  In Lynch, 2000 WL

1286396 (dismissing claims alleging violations of 42 U.S.C. § 1983 and Pennsylvania common

law by the City of Philadelphia and a Philadelphia police officer), the Court relied on Gramenos

for the proposition that, "when an officer has received his information from some person-

normally the putative victim or an eyewitness-who it seems reasonable to believe is telling the

truth, he has probable cause to arrest the accused perpetrator." Id. at *3 (citing Gramenos, 797

F.2d at 439, internal quotations omitted).  The plaintiff alleged that the police officer arrested her

without probable cause because the officer relied solely on the report of the store security

personnel.  Id. at *5.  Drawing heavily on the text from Gramenos, the Court held, "the law is well-established that the report of a seemingly trustworthy security guard provides probable cause for an arrest.  Id. (citing Gramenos, 797 F.2d 432).

To establish probable cause for an arrest, the Third Circuit requires exactly what Officer Buckley accomplished, obtaining the credible report of an eyewitness.  See Merkle, 211 F. 3d 782; Gramenos, 797 F.2d 432.  Here, Kim Baker, a store security officer, made a statement to Officer Buckley indicating she had personally seen Plaintiff conceal the items in a plastic bag.

In Gramenos, the Seventh Circuit remanded the case for further proceedings as to the reasonableness of the plaintiff's detention by the police.  Id., 797 F.2d at 436-437.  This Court finds that the facts most favorable to Plaintiff show that Officer Buckley's detention of Plaintiff was reasonable within the definition of the Retail Theft Statute.

**b.      Qualified Immunity**

**i.      Qualified Immunity: Analytical Framework**

Defendant Buckley also contends that even if there is a triable issue as to whether he lacked probable cause in arresting Plaintiff, he can avoid liability by virtue of qualified immunity.  We agree, and alternatively hold that even if there was not probable cause as a matter of law, the Court would find qualified immunity for Officer Buckley since, based on the facts as he observed them, he had no reason to believe that his conduct was unlawful.

In Cox v. Hackett, 2006 WL 2129060 (E.D. Pa. July 27, 2006), this Court recently discussed the doctrine of qualified immunity.  Id. at *8-11.  That doctrine states that public officials performing discretionary functions generally are shielded not only from liability for civil damages, but immunity from trial, insofar as their conduct does not violate clearly established

statutory or constitutional rights, of which a reasonable person would have been aware.  Harlow v Fitzgerald, 457 U.S. 800 (1982).

In Curley v. Klem, 298 F.3d 271 (3d Cir. 2002), decided shortly after the Supreme Court's decision in Saucier v. Katz, 533 U.S. 194 (2001), the Third Circuit discussed the two-step inquiry that courts must undertake in determining whether an officer is entitled to qualified immunity.  First, the court must decide whether the facts alleged show the officer's conduct violated a constitutional right.  Curley, 298 F.3d at 277 (citing Saucier, 533 U.S. at 201-02).  If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim must fail.  Id.  Second, the court must ask whether the right was clearly established at the time he acted.  "Clearly established" in this context means "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  Moreover, [as the Court in Saucier] noted, "this inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.  If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity."  Id. (citing Saucier, 533 U.S. at 201-02).

The Supreme Court has repeatedly stressed the importance of resolving qualified immunity at the earliest stage of the litigation to spare public officials of the burdens of litigation and trial.  Curley, 298 F.3d at 277 (citing Saucier, 121 S.Ct. at 2156; Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam); Anderson v. Creighton, 483 U.S. 635, 646, n. 6 (1987); Harlow, 457 U.S. at 818)).  For example, in Hunter, the Court repeated that qualified immunity means immunity from suit rather than a mere defense to liability, and that qualified immunity ordinarily

should be decided by the court long before trial.  In that case, an issue arose before the Ninth

Circuit, on the appeal from the defendant's conviction, as to whether certain secret service agents

were entitled to immunity on the claim that they had arrested the defendant without probable

cause.  The Supreme Court criticized the Ninth Circuit for holding that "[w]hether a reasonable

officer could have believed he had probable cause is a question for the trier of fact, and summary

judgment . . . based on lack of probable cause is proper only if there is only one reasonable

conclusion a jury could reach."  Hunter, 502 U.S. 228 (citing 903 F.2d at 721).  The Court held:

> This statement is wrong for two reasons.  First, it routinely places the
> question of immunity in the hands of the jury [when] immunity
> ordinarily should be decided by the court long before trial.  Second,
> the court should ask whether the agents acted reasonably under settled
> law and the circumstances, not whether another reasonable or more
> reasonable interpretation of the events can be constructed five years
> after the fact.

Id.  Therefore, an officer who reasonably, but mistakenly, concluded that probable cause is

present is entitled to qualified immunity.

However, as we discussed in Cox, the Third Circuit itself has noted tension between

some of the broad statements concerning qualified immunity and its application in Third Circuit

jurisprudence.  In Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), the Circuit Court noted that

although the Supreme Court in Hunter directed that qualified immunity is a question of law to be

decided by the court at the earliest stage of the litigation possible, and some of its cases had

properly followed that approach, e.g. Parkhurst v. Trapp, 77 F.3d 707, 713 (3d Cir. 1996);

Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997), the Third Circuit has not always followed

this instruction.  Sharrar, 128 F.3d at 827.  However, it squarely held that both the questions of

"clearly established law" and whether the actions of the officers were "objectively reasonable"

were issues for the court, and only if the historical facts material to the latter were in dispute will there be an issue for the jury.  Id. at 828.  Accordingly, consistent with prior precedent and Hunter, the Sharrar court held that officers who conducted a protective sweep of an arrestee's home following arrests were entitled to qualified immunity.  Id. at 831.

Several years later in Curley, the Third Circuit confronted qualified immunity again. There, the plaintiff, a port authority police officer, claimed the defendant, a state trooper, used excessive force by shooting him when he mistook the plaintiff for a criminal suspect.  While acknowledging that Sharrar dictated that qualified immunity was generally not a jury question, the Curley court held that genuine issues of material fact precluded summary judgment on the issue of the defendant trooper's qualified immunity, finding two disputed historical facts bore directly on the question of what information was available to the trooper at the time of the shooting.  Id. at 279, 281.

The Third Circuit also ruled that disputed facts underlying a claim of qualified immunity should be submitted to a jury in Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006), in which the trial judge had denied summary judgment to the defendant for the basis of qualified immunity because of disputed issues of fact.  After a trial, the jury had returned a verdict for the plaintiff which was affirmed on appeal, holding the jury verdict was based on sufficient evidence.

### ii.      Qualified Immunity: Analysis

With these precedents in mind, the Court finds that in the present case, the evidence of record warrants a grant of qualified immunity in favor of Officer Buckley.  Regarding the first prong, there is no doubt that arrest and imprisonment without probable cause is contrary to the

Fourth Amendment.  However, as discussed above, Plaintiff's assertion that Officer Buckley lacked probable cause has already been rejected.  Even when the facts are viewed in the light most favorable to Mrs. Karkut, they do not show that Officer Buckley violated her Fourth Amendment rights.

However, even if the Court were to conclude, alternatively, that Officer Buckley did not have probable cause to arrest Plaintiff, the Court would nonetheless find qualified immunity because Officer Buckley's arrest of Plaintiff was, in the light of the facts as he confronted them, reasonable under all the circumstances.  See Hunter, 502 U.S. at 228; Curley, 298 F.3d at 282.

## 2.   Unreasonable Force

At oral argument, Plaintiff also argued that even if Defendants are entitled to summary judgment as to the false arrest claim, Officer Buckley separately violated the Fourth Amendment by using excessive force in affecting the arrest.  Although acknowledging that mere tight handcuffing is not sufficient to support a claim, Plaintiff urged that in this case Officer Buckley failed to take into account her medical condition when he unreasonably and excessively tightened the handcuffs on Plaintiff.  Specifically, Plaintiff alleges that the arrest and use of handcuffs caused her to have an anxiety attack, and that because of this, she asked Officer Buckley to loosen the cuffs.  Instead, despite his awareness of her medical condition, he tightened them and forced her to raise her hands into an uncomfortable position.  Plaintiff argues that pursuant to Graham v. Connor, 490 U.S. 386 (1989), Officer Buckley had an obligation to take into account her physical condition, and because he did not, this violated her Fourth Amendment right against use of excessive force.  Pl.'s Resp. to Township Defts. at 18-22.

Officer Buckley argues that his failure to loosen tight handcuffs does not rise to the level

of a constitutional violation.  Hannula v. City of Lakewood, 907 F.2d 129 (10th Cir. 1990).

Further, he asserts that pursuant to the Third Circuit's decision in Fuentes v. Wagner, 206 F.3d

335 (3rd Cir. 2000), whether restraint constitutes punishment in the constitutional sense depends

on whether the restraint was actually related to a legitimate non-punitive governmental purposes.

Here, they argue Plaintiff's placement under arrest and subsequent handcuffing for retail theft

was certainly a legitimate non punitive governmental purpose.  Given the totality of the

circumstances surrounding the use of restraints, Officer Buckley's actions do not constitute a

constitutional violation.  Fuentes, 206 F.3d 335 at 345.

Further, at oral argument, Officer Buckley argued that he had no reason to know of

Plaintiff's anxiety condition before placing the cuffs on her (which was routine practice for all

arrests when transporting is involved), and when she had an anxiety attack, he called an

ambulance and Plaintiff refused medical attention.

### C.       Loss of Consortium

As a final matter, Plaintiff Nancy Karkut's husband, Jeffrey, claims loss of consortium as

a result of the alleged injuries suffered by his wife in Counts VII and XIII of the Complaint.  It is

well-settled that a spouse's right to recover for loss of consortium derives solely from the other

spouse's recovery in tort.  See Murray v. Commercial Union Insurance Co., 782 F.2d 432, 438

(3d Cir. 1986); Danas v. chapman Ford Sales, Inc., 120 F. Supp.2d 478, 489 (E.D. Pa. 2000);

Quitmeyer v. Southeastern Pennsylvania Transportation Authority, 740 F. Supp. 363, 370 (E.D.

Pa. 1990).  Accordingly, since dismissal or summary judgment is warranted against all of Nancy

Karkut's claims, Jeffrey Karkut's loss of consortium claims must also fail.

**VI.**    <u>**Conclusion**</u>

<u>        </u>Accordingly, Defendant Target's motion for summary judgment will be granted as to all claims not brought under a theory of negligence, and Defendant Officer Buckley's motion for summary judgment will be granted.

        An appropriate order follows.

A:\04-3396 Karkut v. Target, MSJ 2006.09.27.wpd

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NANCY KARKUT AND JEFFREY KARKUT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TARGET CORPORATION, DANIEL R. | : | |
| BUCKLEY, POLICE OFFICER, MIDDLETOWN | : | |
| TOWNSHIP, MIDDLETOWN TOWNSHIP | : | |
| POLICE DEPARTMENT AND JANE DOE | : | No:  04-3396 |

## ORDER

AND NOW, this 28th day of September 2006, based on the foregoing Memorandum, it is

hereby ORDERED as follows:

1.  Defendant Target's Motion for Summary Judgment (Doc. No. 31) is GRANTED;

2.  Officer Buckley's Motion for Summary Judgment (Doc. No. 32) is GRANTED;

3.  The Amended Complaint is Dismissed; and

4.  The Clerk shall close this case.

BY THE COURT:

**/s/ Michael M. Baylson**

Michael M. Baylson, U.S.D.J.